CHAMBERS VS. SALLIE, Adm'r, et al.,

29 407
65 359
65 377

29 407
71 275

1. CONTRACTS: *Ante nuptial.*

The fact that one, during an engagement to marry, informs his intended wife that he will settle $10,000 on her, constitutes no inducement to the marriage, and is not binding as an *ante nuptial* contract.

2. HUSBAND AND WIFE: *Gift from husband to wife when the former is indebted.*

A gift from a husband to his wife is not void as to his creditors, if he retains ample means to pay his debts.

3. FRAUDULENT CONVEYANCE: *Of the homestead.*

If a debtor in failing circumstances, for the purpose of hindering and delaying his creditors, conveys the homestead tract of land in trust for the benefit of his wife, the conveyance will be fraudulent and void as to creditors.

4. HOMESTEAD EXEMPTION: *Estate created by.*

The legal effect of the homestead act is not to create a new estate, but only to protect the occupant in the use and enjoyment of the land set apart as a homestead during such occupancy; and the rights of judgment creditors are fully restored upon abandonment or the death of the party without wife or children.

5. CHANCERY JURISDICTION: *To set aside a fraudulent conveyance by a deceased party, etc.*

Where a debtor made a fraudulent conveyance and died, and a judg-

ment creditor, having probated his claim and had it allowed and classed in the third class, filed a bill in chancery to have the conveyance set aside and the land subjected to the payment of his claim. *Held*, that the court had jurisdiction to set the sale aside and subject the property to the payment of the debts, and might well retain its jurisdiction to settle and dispose of the equitable rights of the parties.

APPEAL from *Jefferson* Circuit Court.

Hon. HENRY B. MORSE, Circuit Judge.

*Grace* and *A. H. Garland* and *Wilshire & Allen*, for appellants.

*Bell & Carlton, contra.*

WALKER, J. The appellant, William E. Chambers, filed his complaint in the Jefferson circuit court against William F. Sallie as administrator of the estate of Ice L. Warren, Willis D. Johnson as the administrator of the estate of Samuel H. Warren, Mariah A. Sallie and —— Sallie, her husband. Answers were filed, evidence taken, and upon the final hearing a decree was rendered in favor of the defendants, from which the plaintiff has appealed to this court.

It is alleged by the complainant that as the administrator of the estate of Stephen Bonnell, deceased, he obtained a judgment at law against Samuel H. Warren, for the sum of $4,775 debt and damages, upon which execution issued and was levied upon all of the real estate of said Warren, all of which was sold, except 160 acres on which Warren resided with his family, which was claimed by Warren as a homestead, and was surveyed and set apart to him. That after giving credit for the amount for which the lands were sold, there still remained due, including interest, a balance of $7,057.38. That Samuel H. Warren continued to reside upon the 160 acres set apart as his homestead until his death, in the summer of 1868, and that from the time of his death, his widow, Ice L. Warren,

continued to reside upon and claim said 160 acres until her death in 1871. That said Ice L. Warren administered upon the estate of her husband, Samuel H. Warren, and without closing her administration, died, after which defendant, Willis D. Johnson, was appointed administrator *de bonis non* of said estate. That complainant presented said judgment as a claim against the estate of said Samuel H. Warren, and had the same allowed and classed in the third class of claims for payment. That Samuel H. Warren was in failing circumstances in 1866 and 1867, and in 1868, died insolvent. That for the purpose of defrauding his creditors, and particularly to prevent the payment of the judgment aforesaid, he, under a false pretense of claim, conveyed and caused to be conveyed houses, lots, and other property of great value, without consideration; and particularly, that at a time when he was notoriously insolvent, the said Samuel H. Warren, without any real consideration, conveyed the 160 acres set apart to him as a homestead to Marcus M. Bell, in trust for the use and benefit of his wife, Ice L. Warren, for the purpose and with the intent to defraud complainant, and to hinder and prevent the collection of said judgment, with a prayer that these several conveyances be set aside as fraudulent; that an account be taken, and the property sold to pay the debts of Warren.

Under this state of case, the first question of importance to be settled is, Was the conveyance of the lots of land in Pine Bluff made upon a valuable consideration, or was it a gift from the husband to his wife, and if a gift, was the husband at the time of the gift in such failing circumstances as to make it fraudulent as against his creditors?

It is contended on the part of defendants that there existed between Warren and his wife an *ante nuptial* contract, by which Warren agreed to give to his wife $10,000 upon her marriage with him, or in consideration of such marriage, and

that the lots conveyed by Dorris and wife to Mrs. Warren at the price of $7,000, paid 'for by Samuel H. Warren, were in part performance of this contract. It appears from the evidence that Warren was a man of wealth, with an unincumbered estate, worth in 1861 (the time of his marriage) $60,000 or $70,000. The evidence in regard to the consideration and inducements to marry is, in our opinion, not sufficient to establish a consideration for a contract of marriage.

There is evidence of a correspondence between Warren and his intended wife, in which he informed her by letter that he intended to settle upon her $10,000, in reply to which the wife wrote to him and expressed her thanks for his generous offer; that this correspondence took place after an engagement of marriage had been formed, and consequently formed no part of the consideration or inducement to contract.

It is next contended on the part of the defendants, that Warren, at the time of the purchase and conveyance of the lots to his wife, was not in failing circumstances, but was then possessed of ample means, other than the property so conveyed, with which to pay all of his debts, and that when such is the case, it is no fraud upon the rights of creditors to make such voluntary conveyance. The evidence touching the circumstances of Warren's indebtedness, and his ability to pay, is, that in 1861, his estate was unincumbered with debt, and was worth from $60,000 to $70,000; that in May, 1866, the time of the purchase of the lots of Dorris, Warren was worth about $20,000; he owned the lands bought by him of Bonnell at the price of $14,000, all of which had been paid except the balance due on the last note, which with the interest then due did not exceed $6,000; besides this, he owned the homestead tract of 160 acres. Under this state of case we think that Warren, at the time he caused the conveyance of the lots purchased of Dorris to be conveyed to his wife, had ample

means to pay this debt of complainant, which is the only one shown to exist; and under this state of case, as held by this court in the cases of *Smith v. Yell*, 8 Ark., 470, and *Dodd v. McCraw*, id., 106, the gift is not void; because with ample reserved means with which to pay his debts, he has a right either to sell or give away his property at pleasure.

But it is clearly shown, that after the sale of his lands and reservation of his homestead, he was insolvent and unable to pay the debt due the complainant, which was, according to the evidence of one of the witnesses, the only debt of importance due. This was in 1868, and at the time when the deed of trust was made to Bell for the use of his wife of the 160 acre homestead tract.

The deed purports to be for the consideration of $1,500, but there is no evidence whatever of the payment of either money or property, in consideration of this transfer to Bell; but on the contrary, it is stated in the answer of defendants, that $4,500, part of the $10,000 promised as a marriage settlement, was the true consideration for the execution of the deed of trust to Bell.

And the attorney who prepared the deed deposed, that when he read the deed to Warren, he, Warren, stated to witness and others that he was making the deed to carry out a promise he had made to his wife before his marriage, to settle upon her $10,000 worth of property, and the attorney himself states that if he had known of the promise and the letters, he would have drawn the deed differently. It is not true, then, that $1,500 was the consideration given for making the deed of trust, and as we have held that there was no valid ante nuptial contract, its payment could form no consideration to uphold the trust deed; independent of this, the making of the deed at the same time, as is shown, out of abundant caution, for fear that the deed from Dorris might not be sufficient, and

other circumstances, tend strongly to show that this deed of trust was intended to hinder and prevent the complainant from having satisfaction of his debt. For these reasons, the deed of trust to Bell must be held fraudulent and void as against Warren's creditors.

There is another ground upon which the title to the 160 acres, homestead tract, must fail. This land was the property of Warren at the time the judgment of complainant was rendered and levied upon to be sold in satisfaction of the judgment of complainant. It is true that the sale of the property was suspended by force of the homestead act. The legal effect of the act, as held by this court in *Norris et al. v. Kidd,* 28 Ark., 485, is to create no new estate, but to protect the occupant of the land in the use and occupancy of the land so set apart as a homestead during the time of such occupancy, but if abandoned by removal or death, leaving neither wife nor children to succeed to his rights, the rights of the judgment creditor would be fully restored. The case of *Norris et al. v. Kidd,* above referred to, was decided after a full and exhaustive review of authority, and meets our approval; and is to be considered as decisive of the question.

That the complainant has a valid, unsatisfied claim, probated and classed for payment, against Warren's estate, is both admitted by the answer and proven by the exhibits and evidence. So far as appears from the case before us, this is the only unsatisfied claim against the estate of Warren. Should it be made to appear that others exist of equal or superior class or claim for satisfaction, the proceeds of the sale of the homestead tract can be distributed equitably according to the rights of claimants, should they choose to become parties.

The court of chancery has ample jurisdiction to disincumber the property by setting aside the fraudulent sale of it, and

the pretended rights of homestead after the death of Mrs. Warren, who left no child to succeed to the homestead rights, and may well retain its jurisdiction to settle and dispose of the equitable rights of the parties.

Before making a directory order in regard to the case, it is proper to notice the question, argued by counsel, upon a motion filed at a previous term of this court, which was then considered and overruled. We think the decision there made final, and not properly before us for consideration. The case has been submitted upon its merits, and no question of intervening rights after appeal and submission can properly be considered.

If intervening rights by purchase have arisen since the appeal was taken, the parties must abide the final decision of the case, and then (if they can), assert such rights as may exist under the purchase *pendente lite.*

The decree of the court below must be reversed and set aside, with costs, the cause remanded to the court below, and a decree rendered in favor of the complainant for his debt: and that an order be made directing the sale of the 160 acres (the homestead tract) upon equitable terms, according to the rules and practice in such cases, and the proceeds of such sale be applied to the payment of the complainant's demand, subject to any prior claim, should such be shown to exist, or by *pro rata* payments, should claims of equal grade be found to exist, and further proceedings not inconsistent with this opinion.