GRIFFIN v. MURDOCK ACCEPTANCE CORPORATION.

5-1243                                                    303 S. W. 2d 242

Opinion delivered June 17, 1957.

*T. O. Abbott,* for appellant.

*H. D. Dickens, James M. McHaney* and *Owens, Mc-Haney, Lofton & McHaney,* for appellee.

ED. F. McFADDIN, Justice. This case began as an effort by the appellant, Griffin, to avoid a note on the ground of usury. On March 19, 1955, Griffin purchased a new Rambler Hudson station wagon from Kelly Motors, Inc. of Little Rock, and executed a title retaining note for $2,396.70, as explained hereinafter. Kelly Motors, Inc. immediately transferred the note to Murdock Acceptance Corporation. The note and title retaining contract were on forms furnished by Murdock Acceptance Corporation (hereinafter called "Murdock"); so, under our holding in the Hare case,[1] we treat Murdock as having been the original lender.

Griffin traded an old car to Kelly Motors, Inc. as part payment, and owed a balance of $1,793.79 on the new Hudson Rambler. In addition, Murdock delivered to Griffin certain insurance policies, so that the note signed

---

[1] See *Hare* v. *General Contract Purchase Corp.*, 220 Ark. 601, 249 S. W. 2d 973.

by Griffin was for $2,396.70 as a total of the following items:

| | |
|---|---|
| Balance on Car | $1,793.79 |

Insurance Premiums:

| | |
|---|---|
| Collision and Comprehensive | $209.00 |
| Accident and Health | 59.92 |
| Credit Life Insurance | 59.92 |
| Total Insurance Premiums | 328.84 |
| Total Interest Charge | 274.07 |
| Face Amount of Note | $2,396.70 |

The note was payable in thirty monthly payments of $79.89 each. No payments were made on the note; and on May 17, 1955 (just short of sixty days from the original purchase) Griffin — claiming usury — brought this suit against Murdock to have the note and conditional sales contract cancelled. Murdock denied the usury and sought judgment on the note and the enforcement of the vendor's lien. (§ 34-2301 Ark. Stats.) The Chancery Court refused Griffin's claim of usury and rendered judgment for Murdock as prayed. This appeal followed, in which Griffin urges only two points for reversal.

I. Griffin says: *"The appellant contends that the conditional sales contract is usurious: the premium for the health and accident insurance in the sum of $59.92 was imposed upon the appellant, against his will. Appellant specifically told the agent for the insurance company, who was also the agent for the seller, the kinds of insurance he wanted: that he had plenty of accident and health insurance with his employer."*

The burden of appellant's argument on this point is, that he did not want the health and accident insurance but was compelled to obligate himself for the premium of $59.92 in order to purchase the car on the time pay-

ment plan. The Trial Court held against the appellant on this point; and the evidence amply supports the finding of the Trial Court.

Assuming that the health and accident premium of $59.92 could be successfully urged as a cloak for usury, still the facts remain: (a) that the appellant received the health and accident policy, (b) that he was not overcharged for the premium, and (c) that he enjoyed the protection of the policy. Also, Griffin admits that he signed a written application for the health and accident insurance policy. He claims that he did not read the application and did not know what he was signing; but the automobile salesman testified that he explained the insurance in full to Griffin, and that Griffin said he wanted all possible coverage: ''I want it all.'' Without detailing all the other testimony, we conclude that the Chancery Court was correct in finding against appellant on this first contention.

II. The appellant says: *''The conditional sales contract is usurious: in spite of the fact that the appellant, at the time of the purchase of the car, and at all times thereafter, was entitled to a class 'H' classification rate with a premium of $189.00 for the collision and comprehensive coverage, he was instead arbitrarily placed in class 'I' rate, and charged a premium of $209.00, resulting in an excess charge of $20.00 for this insurance coverage.''*

This point presents a more serious issue. Murdock admits that there was a $20.00 overcharge on the insurance premium for the comprehensive and collision insurance; that is, the premium should have been $189.00 instead of $209.00, as charged. Also, it is conceded that the total interest charge of $274.07 is less than 10 per cent if there had been no $20.00 error, but is slightly more than 10 per cent if the $20.00 overcharge for the insurance was really a cloak for usury. So, the case turns on whether there was an honest mistake in the overcharge of $20.00 on the insurance premium, or whether the ''mistake'' was made in order to collect more than 10 per cent interest.

Thus we have a fact question; and the case at bar is strikingly similar to two of our recent cases: one being *Whiddon* v. *Universal CIT Credit Corp.*, 227 Ark. 824, 301 S. W. 2d 567; and the other being *Jones* v. *Jones*, 227 Ark. 836, 301 S. W. 2d 737. In the Whiddon case the Chancellor, after seeing the witnesses and hearing the evidence, held that there was an honest mistake; and we affirmed the Chancellor. In the Jones case, the Chancellor, after seeing the witnesses and hearing the evidence, held that the mistake was a cloak for usury; and we affirmed the Chancellor. In the case at bar, the Chancellor, after seeing the witnesses and hearing the evidence, found that there was an honest mistake and that Murdock acted with reasonable promptness in correcting the mistake; and we conclude that the Chancellor's findings are not against the preponderance of the evidence.

The evidence, here, shows that the car was purchased on March 19, 1955; that Griffin was entitled to a 1,000-mile check-up and a 2,000-mile check-up; that when he had the 1,000-mile check-up in the early part of April he went to see Murdock about the insurance policies which he had received; and that the policies were explained to him. One of the policies was for collision and comprehensive insurance; and the premium charged on that policy was $209.00 because the car had been classified as "I." Cars are classified by symbols ranging from "A" through "R," depending on the year and model of the car, the age of the drivers, and the use to which the car is being subjected. On Griffin's second visit about the middle of April, 1955, he informed Murdock that an insurance agent in El Dorado had advised him (Griffin) that the car should have been classified as "H" instead of "I"; and that the correct premium was $189.00 instead of $209.00. Murdock had remitted the premium of $209.00 to the Universal Security Insurance Company; and Murdock promised Griffin to look into the matter and write him.

Just a few days later, and under date of April 19, 1955, Murdock wrote Griffin and admitted the mistake. Griffin testified that Murdock told him that when he

made his first payment on the note, he could deduct the $20.00 from such payment. The foregoing, and other facts in the record, amply support the Chancellor's finding that the $20.00 insurance premium overcharge in this case was an honest mistake, and that as soon as Murdock discovered the mistake, it promptly made correction and offered restitution. As aforesaid, under these facts and circumstances, we cannot say that the Chancellor decided against the weight of the evidence in holding that the mistake in this case was not a cloak for usury.

III. *The Cross Appeal of Murdock Against Columbian Carbon Company.* On May 24, 1956, the Chancery Court entered judgment in favor of Murdock and against Griffin for $2,370.11, together with interest and costs and attorney's fee, "for all of which execution may issue"; and the Court ordered that the automobile be sold under the vendor's lien statute (§ 34-2301 Ark. Stats.), with the proceeds of the sale to apply on the judgment. On May 31st Griffin gave notice of appeal from the judgment.

On June 13th Murdock obtained a writ of garnishment after judgment (§ 30-501 *et seq.,* Ark. Stats.), and obtained service on Columbian Carbon Company, requiring it to answer within twenty days as to any moneys or properties in its hands belonging to D. E. Griffin. This garnishment was served on June 13th; and on June 18th, on motion of Griffin, the Chancery Court quashed the writ of garnishment.[2] On July 16th Murdock filed in the Chancery Court a notice that it was appealing[3] to the Supreme Court from the order quashing the writ of garnishment.

---

[2] The order recited in part: ". . . said writ of garnishment be and the same is hereby quashed and the garnishee, Columbian Carbon Company, be and is hereby released from answering herein."

[3] The record does not disclose that Columbian Carbon Company was ever served with any notice of appeal; but in this Court, Murdock argues in its cross appeal: "Accordingly, the action of the lower court in quashing the writ should be reversed with directions to enter judgment against Columbian Carbon Company for the amount of judgment remaining unpaid. In the alternative, appellee submits that Columbian Carbon Company should be required to answer what goods, chattels, moneys, credits and effects it had in its possession belonging to appellant from the date of service of said writ until the return day thereof, and that judgment be entered against Columbian Carbon Company in said amount."

, Assuming, but not deciding, that Murdock has properly brought to this Court an issue on quashing the garnishment, nevertheless we hold Murdock is entitled to no judgment against Columbian Carbon Company on the said writ of garnishment heretofore issued. This holding is true because Murdock never superseded the order of the Chancery Court that quashed the writ of garnishment. In *Hot Springs Concrete Co.* v. *Rosamond,* 180 Ark. 690, 22 S. W. 2d 368, we cited from the earlier case of *American National Bank* v. *Douglas,* 126 Ark. 7, 189 S. W. 161, L. R. A. 1917B 588, and held that when a writ of garnishment was quashed, and no supersedeas bond was filed to supersede the order of quashing, then the garnishee was fully released from the garnishment. That case is ruling here; so Murdock's cross appeal is without merit.

Affirmed.