**WESTERN CASUALTY AND SURETY COMPANY, Plaintiff-Appellee,**

v.

**Eusebius J. BIGGS, Defendant-Appellant.**

**No. 11074.**

United States Court of Appeals Seventh Circuit.

Oct. 18, 1954.

Rehearing Denied Dec. 27, 1954.

Eusebius J. Biggs, Chicago, Ill., pro se.

William McKinley, Paul E. Price, Chicago, Ill., for appellee.

Before DUFFY, Chief Judge, and MAJOR and SWAIM, Circuit Judges.

PER CURIAM.

In 1938 Eusebius J. Biggs and Andrew B. Gregory, doing business as partners under the firm name of Biggs and Gregory and Biggs Construction Company, were awarded a contract to build a post office for the Government at Newton, Illinois. These general contractors furnished a regular contractor's performance bond and they also, pursuant

to the Miller Act, 40 U.S.C.A. § 270a(a)(2), furnished a payment bond, with the Western Casualty and Surety Company as surety thereon, in which the contractors promised that they would promptly pay the amounts due to all persons supplying labor and materials in the construction of the said post office.

In 1940 the Western Casualty and Surety Company, in order to protect itself from liability on the payment bond and to prevent the circuity of action which would result from its being sued as surety and in turn suing its principals, brought a suit in equity in the Northern District of Illinois, Eastern Division, against the principals on the payment bond. This complaint alleged that the defendant contractors still owed subcontractors and material men for labor and material used in the construction of the post office in the sum of $5,800.00; that the general contractors had already collected from the Government all but approximately $3,500.00 of the contract price; that the general contractors were insolvent and unable to pay the debts incurred for labor and materials; and that demands had been made on the plaintiff, as surety, to pay for such labor and materials.

The complaint prayed that a receiver be appointed to collect and take charge of all funds payable to the defendants on the construction contract and to hold said funds until the further order of the court; that the defendants be enjoined from collecting and disposing of such funds; and that the court adjudicate the plaintiff's rights in and to such funds, declare a lien thereon and declare that all such funds be applied to the exoneration of plaintiff's liability as surety on the payment bond.

On July 8, 1940, the District Court entered an order decreeing that all money due or to become due to the defendants on the construction contract be paid jointly to the plaintiff and defendants, deposited in a special joint bank account and applied to the payment of the subcontractors' claims. At the time this order was entered the defendant Biggs was in court in person, representing himself, the partnership and the defendant corporation, and agreed that this order should be entered. Thereafter the subcontractors came into court with intervening petitions and claims for alleged unpaid balances due them. After hearing evidence the court determined the amount due the subcontractors and payment was made from the special joint account. When all the subcontractors had been paid the appellee surety company was awarded judgment for $1,945.78, the amount it had been required to pay as surety on the payment bond. On the motion of the attorney for the surety company the amount of this judgment was later reduced to $1,232.96. No appeal was taken from the judgment.

On October 29, 1953, more than ten years after the judgment was taken by the surety company against the defendants, one of the parties defendant, Eusebius J. Biggs, under Rule 60(b)(4) of the Federal Rules of Civil Procedure, 28 U.S.C.A., filed a motion to set aside the judgment against him and the other defendants; to recover the money paid to the plaintiff and subcontractors under said judgment; to recover damages against the surety company for allegedly colluding with the intervening subcontractors to collect unjust claims, and, finally, to have counsel for the surety company barred from further practice of law before the District Court.

Appellant claims that the original suit was brought under the Miller Act which provides that:

"Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere * * *." 40 U.S.C.A. § 270b(b).

Appellant argues that under this section the District Court for the Northern District of Illinois, Eastern Division,

had no jurisdiction over proceedings concerning a building in the Southern District of Illinois. We would be in complete accord with the appellant if this had been a proceeding under the Miller Act, but it is apparent that it was not. The plaintiff originally brought a suit in equity in the nature of a bill *quia timet* to enforce its equity of exoneration from appellant. It is well settled that a court of equity will, at the request of a surety, seize funds due its principal and apply them to the principal's debts if the surety can show that: the debts are currently due, the principal is unable or refuses to pay them, and if they are not paid the surety will become liable. Morley Construction Co. v. Maryland Casualty Co., 300 U.S. 185, 189–190, 57 S.Ct. 325, 81 L.Ed. 593; Chicago Title & Trust Co. v. Fox Theatres Corp., 2 Cir., 91 F.2d 907, 910; Admiral Oriental Line v. United States, 2 Cir., 86 F.2d 201, 204; American Surety Co. of New York v. Lewis State Bank, 5 Cir., 58 F.2d 559, 560; Glades County, Fla. v. Detroit Fidelity & Surety Co., 5 Cir., 57 F.2d 449, 451–452; Street v. Chicago Wharfing & Storage Co., 157 Ill. 605, 614–615, 41 N.E. 1108; Ridgeway v. Potter, 114 Ill. 457, 461, 3 N.E. 91; Moore v. Topliff, 107 Ill. 241, 249.

In Moore v. Topliff, supra, the Illinois Supreme Court said, 107 Ill. at page 249: "A surety, after the debt has become due, may, without making payment himself, come into a court of equity and compel the principal to pay the debt. [Citations.] In 2 American Lead. Cases, 412, the rule is stated thus: 'The surety stands in the position of an equitable assignee, and may use the remedies of the creditor, at his own risk and cost. He may accordingly file a bill against the principal to compel him to pay the debt at maturity, and make the creditor a party, because his interests are at stake, and in order that he may be at hand to receive the money.'" Illinois has long afforded this equitable remedy to sureties.

█ The surety in this case could not have brought an action under the Miller Act. The statute provides only for an action on the surety bond by one who has furnished labor or material and has not been paid. There is no provision for a suit by the surety. 40 U.S.C.A. § 270b(a).

█ Federal jurisdiction in this suit was based on diversity of citizenship, thus, it was properly brought in the Northern District of Illinois where the individual defendants resided and where the corporate defendant had its principal place of business. 28 U.S.C.A. § 1391(a) and (c).

█ Appellant cannot at this late date be heard to say that the original judgment entered July 8, 1940, was obtained by collusion between counsel for the appellee and the court. The record shows that Biggs was present and agreed in open court that all moneys due or to become due on the contract should be paid jointly to the contractors and the surety company, should be deposited in a joint account, and should be disbursed in the payment of just claims for labor and material used in the construction of the post office. The court determined the amount which was justly due to the subcontractors who filed intervening claims against the funds which the court had ordered held for the purpose of paying such claims.

The subcontractors in their intervening petitions stated that they were proceeding under the Miller Act. Appellant Biggs has seized upon this statement to renew his argument that the court lacked jurisdiction. No matter what the subcontractors thought or what they said in their intervening complaints, it is clear that they intervened in this equitable proceeding to claim and prove their right to part of the funds held under the order of the court for payment of the claims of those who had furnished labor and material in the construction of the Newton Post Office.

The record presents no evidence of fraud or collusion practiced by anyone against the appellant Biggs. On the contrary, the picture it gives of the suit is one of complete fairness.

Appellant's allegations of fraud and collusion seem to grow out of the fact that he entirely failed to understand the nature of the equity proceedings in which he was a party, and refused to employ counsel who would have understood and have been able to explain the proceedings to him. The record convinces us, however, that although appellant's understanding of the case was impaired by his failure to be represented by counsel, no one took an unfair advantage of him.

The judgment of the District Court is Affirmed.