JACINTO CASABLANCA, peticionario, *v.* TRIBUNAL SUPERIOR, SALA DE SAN JUAN, HON. WILFRIDO ROBERTS, JUEZ, demandado; CONTINENTAL CASUALTY COMPANY, interventora.

*Número:* O-70-96      *Resuelto:* 3 de noviembre de 1971

*Ramón Lloveras Otero,* abogado del peticionario; *González & Rodríguez,* abogado de la interventora.

El Juez Asociado Señor Martín emitió la opinión del Tribunal.

La Comisión de Energía Nuclear de Estados Unidos contrató con Southern Construction Co., Inc., la construcción del centro nuclear de Mayagüez. Southern Construction Co., compañía de construcción, y la Continental Casualty Co., compañía de fianzas, como principal y fiadora respectivamente, prestaron una fianza para garantizar el pago de los materiales y la mano de obra que se utilizaría en la ejecución de dicho proyecto. La fianza se prestó según requerido por el estatuto federal conocido como la Ley Miller, 49 Stat. 793, de 24 de agosto de 1935 (40 U.S.C. 270(a) *et seq.*). En la ejecución

del referido proyecto Southern Construction Co. subcontrató parte de las obras con el aquí peticionario Jacinto Casablanca.

El 5 de abril de 1960 Jacinto Casablanca inició una acción en el Tribunal Superior de San Juan reclamando de Southern Construction Co. el pago de ciertas cantidades adeudádales bajo el referido subcontrato, y una suma por daños y perjuicios alegadamente causados por dicha demandada al incumplir ciertas condiciones del subcontrato. La demandada contestó la demanda el 5 de julio de 1960. A fines de ese mismo año los abogados del demandante comenzaron a hacer gestiones sobre si la Southern Construction tenía fianza alguna sobre el proyecto. Al respecto solicitaron del Comisionado de Seguros de Puerto Rico una copia de la fianza prestada por Continental Casualty sobre el mencionado proyecto. El Comisionado le informó que los agentes de dicha compañía de fianzas alegaban no haber otorgado fianza alguna en relación con el proyecto aludido. Luego, en 1963 los abogados de la Continental Casualty informaron al demandante que la oficina central de la compañía no tenía constancia de que se hubiere expedido póliza alguna a favor de Southern Construction.

Así las cosas el 1 de noviembre de 1966 se celebró la vista del caso en su fondo, a la que únicamente compareció el demandante y practicó su prueba. En 27 de enero de 1967 el tribunal dictó sentencia condenando a Southern Construction Co. a pagar al demandante $57,099.89 como daños y perjuicios, $12,053.25 por obligaciones adeudadas, intereses legales sobre esta última suma desde el 27 de enero de 1960 más $500 de honorarios de abogado.

El 16 de agosto de 1968 la Comisión de Energía Atómica de Estados Unidos remitió a los nuevos abogados del demandante copia del contrato de fianza (*payment bond*) expedido por la Continental Casualty el 27 de junio de 1958 que cubría el contrato de construcción a que se refiere este caso.

El 20 de septiembre de 1968, veinte meses después de dictada sentencia en contra de Southern Construction Co., el demandante, interesado en ejecutar contra la compañía fiadora dicha sentencia, radicó un escrito ante el tribunal de instancia que tituló "Procedimiento contra Deudor Solidario" solicitando se ordenara la citación de la Continental Casualty para que mostrara causa por la cual no debía estar obligada por la referida sentencia. Citada la Continental Casualty se celebró la vista del caso el 18 de octubre de 1968. El tribunal de instancia finalmente resolvió en 31 de marzo de 1970 que siendo la fianza una prestada bajo un contrato con el Gobierno de los Estados Unidos el mismo estaba sujeto al estatuto conocido como Ley Miller que dispone que toda acción o reclamación bajo tales contratos deberá de incoarse en la Corte de Distrito Federal para el distrito donde se ejecute el contrato. El tribunal de instancia concluyó que la jurisdicción de los tribunales federales es exclusiva para tales reclamaciones y en su consecuencia se declaró sin jurisdicción en cuanto a la compañía fiadora Continental Casualty. De dicha resolución el peticionario recurre ante nos.

El peticionario en su alegato levanta esencialmente dos cuestiones, a saber: (1) que la Ley Miller no es de aplicación a su reclamación, y por consiguiente no es de la exclusiva jurisdicción del foro federal; y (2) que de ser aplicable, las propias actuaciones de la Continental Casualty impiden a ésta ampararse bajo las disposiciones de dicha ley federal.

La Ley Miller, 40 U.S.C. 220(a) *et seq.* es un estatuto de carácter general que requiere la prestación de fianzas en todo contrato para la construcción, reparación o alteración de un edificio u obra pública federal. (¹) *Tropicair Mfg. Corp.*

---

(¹) En Puerto Rico se adoptó legislación similar para cuando se trata de obras públicas estatales, Ley Núm. 388 de 9 de mayo de 1951, 22 L.P.R.A. sec. 47 *et seq.* Véanse, *Jiménez y Salellas, Inc.* v. *Maryland Cas. Co.*, 92 D.P.R. 207 (1965); *Ferrer* v. *Alliance Company of P.R., Inc.*,

v. *The Coite Somers Co.*, 96 D.P.R. 145 (1968); Byrne y Costello, *The Evolution of Coverage under the Miller Act*, 28 Fordham L. Rev. 287 (1959); Stickells, *Bonds of Contractors on Federal Public Works—The Miller Act*, 36 B.U.L. Rev. 499 (1956). Dicha ley exige que el contratista de una obra federal preste dos fianzas. Una a favor del Gobierno de Estados Unidos que asegura la terminación de la obra según lo pactado (*performance bond*) y otra aunque a favor del gobierno también pero cuyo propósito es la protección de las personas que suplan labor y materiales en la ejecución del contrato (*payment bond*).

■ La fianza del caso de autos fue prestada conforme a las disposiciones de la Sec. 270 (a) de la Ley Miller. El formulario del documento de fianza utilizado en este caso lo proveyó la agencia federal General Services Administration y el mismo expresa su propósito de proteger las personas que suplan labor y materiales conforme a lo dispuesto por la Ley Miller. La cláusula penal de la fianza, según requerido por la referida ley federal, obliga al principal y a su fiadora a favor de los Estados Unidos únicamente. *United States* v. *Carter*, 353 U.S. 210, 77 S.Ct. 793 (1957); *United States* v. *Peerless Casualty Company*, 255 F.2d 137 (8 Cir. 1958); *United States* v. *Ft. George G. Meade, Etc.*, 186 F.Supp. 639 (1960). Y, no hay duda, de que la fianza en este caso cubre una obra pública federal. Véanse, *United States* v. *Irwin*, 1942, 316 U.S. 23, 62 S.Ct. 899; *Fidelity & Deposit Company of Maryland* v. *Harris*, 360 F.2d 402.

■ El peticionario en efecto arguye que aun tratándose de una fianza expedida bajo la Ley Miller, los tribunales de Puerto Rico tienen jurisdicción para considerar reclamaciones por fianzas prestadas bajo dicha ley. No estamos de acuerdo.

93 D.P.R. 1 (1966); *Ulpiano Casal, Inc.* v. *Totty Mfg. Corp.*, 90 D.P.R. 739 (1964); *Cristy & Sánchez* v. *E.L.A.*, 84 D.P.R. 234 (1961); *Arzuaga & Santana* v. *Ramos Rivera*, 100 D.P.R. 123 (1971).

La Sec. 270 (b) de la Ley Miller expresamente dispone que cualquier acción incoada bajo la misma se promoverá a nombre de Estados Unidos para beneficio del reclamante "en la corte de distrito de Estados Unidos de cualquier distrito en que se lleve a cabo y ejecute el contrato y en ningún otro tribunal, irrespectivamente de la cuantía reclamada." Esta disposición ha sido interpretada unánimemente en el sentido de que la corte federal tiene jurisdicción exclusiva sobre la materia y los tribunales estatales no pueden entender en dichos casos. *Blanchard* v. *Terry & Wright, Inc.*, 331 F.2d 467, *certiorari* denegado, 85 S.Ct. 62; *United States* v. *Aetna Casualty & Surety Company*, 297 F.2d 665 (1962); *Gifford-Wood Co.* v. *Travelers Indemnity Co.*, 249 N.Y.S.2d 317; *United States* v. *Sovereign Construction Co.*, 311 F.Supp. 371 (1970). The American Law Institute ha recomendado que se continúe la exclusividad de foro en casos bajo la Ley Miller. [2]

En el caso de *Tropicair Mfg. Corp.* v. *The Coite Somers Co.*, 96 D.P.R. 145 (1968), tuvimos ante nosotros el mismo problema que nos ocupa. Sin embargo, se trataba allí de una reclamación de un materialista contra el contratista y su fiadora por materiales suplidos en la ejecución de una obra bajo otro estatuto federal conocido como la Ley

---

[2] The American Law Institute, *Study of the Division of Jurisdiction between State and Federal Courts*, Washington, Mayo 22, 1968, págs. 493–497. A la pág. 497 se concluye: " 'teniendo en mente el historial legislativo; la política y el propósito de las leyes Miller y Capehart; las diferencias en las leyes estatales; las características comunes de estos proyectos de construcción; el hecho de que los participantes en los mismos frecuentemente proceden de diferentes lugares del país; el darse cuenta de que hay la necesidad de lograr un medio práctico, y a la vez justo y razonable de reunir en un solo foro todas las partes interesadas que inicialmente estuvieron dispuestas a dedicar sus talentos en construcciones a un proyecto en un área local; . . . y el estar consciente de que se evitaría la demora y los gastos que en otra forma se incurriría en una litigación múltiple en foros geográficamente separados . . .,' se propone en la sección 1311 (b) que se continúe la jurisdicción exclusiva en los casos bajo la Ley Miller, independientemente de la cuantía en controversia."

Capehart.(³) Existe en los tribunales federales un conflicto irreconciliable en cuanto a si la Ley Miller aplica a los proyectos bajo la Ley Capehart, debido esencialmente a que algunos tribunales han considerado que los proyectos "Capehart" no son programas federales en el sentido convencional.

Este Tribunal, en el caso de *Tropicair*, reconociendo que se trataba de un problema de interpretación de ley federal y dado el conflicto de interpretación existente en las jurisdicciones federales, adoptó el criterio unánime de las cortes estatales al resolver que la Ley Miller no era de aplicación a los proyectos cubiertos por la Ley Capehart, por lo que los trabajadores de dichos proyectos podían recurrir a nuestros tribunales estatales en protección de sus derechos. En el caso de autos, por el contrario, es indudable que se trata de una obra pública federal realizada a través de la Comisión de Energía Nuclear, por lo que le son aplicables las disposiciones de la Ley Miller. Siendo ello así carece de jurisdicción el Tribunal Superior para entender en el caso de autos.

En apoyo de su contención de que la ley determinante en la solución de este litigio es la de Puerto Rico el peticionario cita los casos de *Blair* v. *United States*, 147 F.2d 840 y *United States* v. *Trione*, 97 F.Supp. 522. Dichos casos no son de aplicación a la situación del presente caso. Ambos son reclamaciones bajo la Ley Miller en tribunales federales. En ninguno de ellos se planteó la cuestión jurisdiccional.

Lo que ocurrió en ambos casos fue que el tribunal federal

---

(³) La Ley Capehart, 42 U.S.C. § 1594, 69 Stat. 651, autoriza al Secretario de Defensa a contratar la construcción de viviendas en tierras pertenecientes a o arrendadas por Estados Unidos *para proveer residencias adecuadas al personal militar*. En su parte pertinente dispone que:

"Se requerirá en dichos contratos la prestación por el contratista de fianzas para garantizar la ejecución del contrato y el pago [de materiales y mano de obra] por fiadores aceptables para el Secretario de Defensa o la persona a quien éste designe, y la prestación de dichas fianzas se considerará como en cumplimiento suficiente con las disposiciones de la sección 270(a) del Título 40 [Ley Miller] y no se requerirán fianzas adicionales bajo dicha sección." (Bastardillas nuestras.)

aplicó disposiciones de leyes estatales en cuestiones sobre las que la Ley Miller guarda silencio.

■ Es conveniente afirmar que a pesar de que las cortes estatales tienen jurisdicción para entender en reclamaciones de un subcontratista contra un contratista por incumplimiento de contrato o por el costo de labor y materiales, en proyectos cubiertos por la Ley Miller, no la tienen en reclamaciones contra una aseguradora o fiadora ya que en estos casos la jurisdicción federal es exclusiva. *American Creosote Works v. Caltoman Contractors,* 160 So.2d 310 (1964); *Voelz v. Milgram Contracting Co.,* 75 N.W.2d 305; 272 Wis. 366. Por consiguiente, la sentencia dictada contra el contratista en una corte estatal no obliga a la fiadora. *United States Fidelity & Guar. Co.* v. *Hendry Corporation,* 391 F.2d 13 (5th Cir. 1968).

El segundo apuntamiento del peticionario señala que la fiadora Continental Casualty Co. está impedida de levantar la defensa de falta de jurisdicción del tribunal bajo la Ley Miller por haber ésta trasmitido información a través de sus abogados y del Comisionado de Seguros, negando que hubiese expedido fianza alguna sobre el contrato objeto de la reclamación.

■ No podemos darle la razón al peticionario, a pesar de que censuramos la forma en que la aseguradora eludió el dar la información correcta sobre su relación contractual con la compañía constructora demandada. Hemos sostenido que no toda conducta o actuación inconsistente con actos anteriores da lugar a la defensa de *estoppel,* la cual sólo aplica cuando confiando una parte en la verdad de los actos o manifestaciones de otra, es *inducida* a actuar en forma tal que, de no aplicarse esa doctrina, sufriría perjuicios. *Centro de Dependientes* v. *Montalvo,* 72 D.P.R. 408 (1951); *Serra, Garabis & Co., Inc.* v. *Municipio,* 42 D.P.R. 468 (1931); véase, *F. Rodríguez Hnos. & Co.* v. *Aboy,* 66 D.P.R. 525 (1946).

El peticionario tenía los medios a su disposición para enterarse sobre los detalles de la fianza que le garantizaba, especialmente si se dirigía a la agencia del gobierno federal que dirige el proyecto. Sin embargo éste no fue suficientemente diligente en sus pesquisas.

Como regla general, bajo circunstancias de hecho apropiadas, la doctrina de *estoppel* puede ser una defensa en un caso bajo la susodicha Ley Miller. *United States* v. *Fryd Construction Corporation*, 423 F.2d 980 (Fla. 1970); *Graybar Electric Co.* v. *John A. Volpe Construction Co.*, 387 F.2d 55 (1967). Véanse además, *United States* v. *Greene Electrical Serv. of Long Island, Inc.*, 379 F.2d 207; *United States* v. *Glassman Construction Company*, 397 F.2d 8 (1968). Sin embargo, no hemos encontrado ningún caso bajo la Ley Miller, en que se haya utilizado la doctrina de *estoppel* para conceder jurisdicción sobre la materia a un tribunal estatal que de otro modo no tiene jurisdicción. Debe seguirse la regla invariable, establecida por las cortes federales y estatales, al efecto de que no habiendo jurisdicción sobre la materia, no puede adquirirse ésta por medio de *estoppel*. *In Re Federal Facilities Realty Trust*, 227 F.2d 651; *Silvers* v. *Maryland Casualty Company*, 239 F.2d 865 (1956); *Mahoney* v. *Northwestern Bell Telephone Co.*, 377 F.2d 549 (1967); *Radio Corporation of America* v. *Philco Corporation*, 187 F.Supp. 940 (1960); *Gahn* v. *Gahn*, 116 A.2d 902 (1955); *In re Mize's Guardianship*, 142 P.2d 116; *Behee* v. *Beem*, 131 P.2d 675; *In Re Freshour's Estate*, 280 P.2d 642.

Habiéndose llegado a la conclusión de que los tribunales estatales no tienen jurisdicción para atender en una reclamación bajo la Ley Miller, *debemos confirmar la resolución dictada por el tribunal de instancia el 31 de marzo de 1970.*

El Juez Presidente, Señor Negrón Fernández, no intervino.